


**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON
THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 9, 2026**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| ANNIELEE REGAN CLICK, | § | Case No. 25-60059-bwo13 |
| | § | |
| Debtor. | § | |

**MEMORANDUM OPINION AND ORDER
OVERRULING CLAIM OBJECTION**

On January 13, 2026, the Court commenced a hearing to consider *Debtor's Objection to Claim No. 6 Filed by Robbie Robinson & Heath Robinson* (the "Claim Objection") [Dkt. No. 41] filed by Annielee Regan Click (the "Debtor").[1] Robbie and Heath Robinson (the "Creditors") filed an initial and supplemental response opposing the Claim Objection. Dkt. Nos. 46, 62. At the conclusion of the January 13 hearing, the Court requested additional briefing. On January 16, 2026, Debtor and Creditors filed their briefs as requested. Dkt. Nos. 86, 87.

---

[1] Unless otherwise stated, all "Dkt. No." references herein are to the above captioned bankruptcy case.

1

## I. Claim No. 6

On June 24, 2025, Creditors filed their proof of claim in the amount of $161,575.63. Creditors' proof of claim was registered as Claim No. 6 in the Claims Register. On November 7, 2025, Creditors filed an amended proof of claim, which states a claim amount of $161,252.43 and pre-petition arrearages of $56,023.19 ("Creditors' Claim").[2] The annual interest rate used to calculate the arrearage amount is 18%. Creditors' Claim relates to the indebtedness Debtor incurred to purchase her home. Creditors' Claim is filed on Official Form 410, attached to which is Official Form 410A, a copy of the Real Estate Lien Note (the "Note"), a copy of the Deed of Trust securing the Note, the loan history, and other documents pertaining to the claim.

The Claim Objection asserts that Creditors' Claim includes an inaccurate calculation of the amount the Debtor owes and contests the validity of Creditors' Claim. Prior to the hearing, the parties resolved Debtor's dispute about the validity of Creditors' Claim. Thus, the remaining challenge to Creditors' Claim is that the claim amount is incorrect.

In the Claim Objection, Debtor alleges that the supporting documentation included with the Creditors' Claim suggests that Creditors charged a monthly default interest rate as opposed to an annual default interest rate. The Claim Objection does not otherwise challenge the interest rate used to calculate the amount owed in Creditors' Claim. At the hearing, however, the Debtor argued that

---

[2] Creditors' amended claim reduced the amount owed by $323.20. The amended claim did not resolve the Claim Objection, and the difference of $323.20 is not relevant to the Court's decision here.

the Note is ambiguous, because it does not specify an interest rate for matured, unpaid amounts.[3] Instead, the Note simply says such interest rate is "[t]he highest allowed by law." The Debtor further argues, because of the asserted ambiguity, the Court should simply count the number of payments the Debtor missed during the default period and add reasonable costs and expenses.

## II. Jurisdiction and Venue

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (O). Venue of this contested matter is proper pursuant to 28 U.S.C. § 1408.

## III. Burden of Proof

A properly filed proof of claim is *prima facie* evidence of the claim's validity and amount. Fed. R. Bankr. P. 3001(f); *accord McGee v. O'Connor (In re O'Connor)*, 153 F.3d 258, 260 (5th Cir. 1998). The party objecting to the claim bears the burden of proof to rebut the claim's presumptive validity. *See Bryant v. Bosco Credit Tr. II Tr. Series 2010-1*, 621 B.R. 113, 116 (N.D. Tex. 2020) (explaining that the objecting party must "present 'evidence of equal or greater probative force to that of the proof of claim to refute some aspect of the proof of claim.'"). "Upon production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence. However, the ultimate burden of proof lies with the party who would bear the burden if the dispute arose outside of the bankruptcy context." *In re Armstrong*, 320 B.R. 97, 102–03 (Bankr. N.D. Tex. 2005) (citing

---

[3] The Note was admitted as Creditors' Ex. 2.

3

*Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000)) (citation modified).

As stated herein, the Court overrules the Debtor's Claim Objection.

### IV.   Analysis

#### A.   The Note's Relevant Terms.

Relevant to the Court's analysis, the Note provides the following terms:

1. Annual Interest Rate on Unpaid Principal from Date: 3.125%;[4]

2. Annual Interest Rate on Matured, Unpaid Amounts: The highest allowed by law;

3. If Maker defaults in the payment of this note . . . , and the default continues after Payee gives Maker notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Payee may declare the unpaid principal balance and earned interest on this note immediately due.[5]

4. Interest on the debt evidenced by this note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law.

5. The length of financing provided to Maker by Payee is for a period of thirty (30) years or (360) months and there are no restrictions or penalty for early payoff.

As a preliminary matter, Creditors introduced evidence, which the Debtor did not dispute, proving the Note was properly accelerated on May 3, 2023. Promissory notes that are properly accelerated are deemed matured. *See Hence v. Indian Cave Park P'ship*, No. H-07-0098, 2007 WL 1176787, at \*3–4 (S.D. Tex. Apr. 20, 2007); *Ali v. Merchant (In re Ali)*, No. 13-50724-CAG, 2015 WL 4611343, at \*38–40 (Bankr. W.D. Tex. July 23, 2015).

The Note neither states which state's law governs nor references any state

---

[4] "Date" is defined as March 3, 2014.

[5] Debtor, with Carlton Travis Wadsworth, is defined as Maker.

4

law. Thus, the Court must determine which state's law governs the interpretation and enforcement of the Note before it can determine the appropriate interest rate. *See Raleigh*, 530 U.S. at 20 ("The 'basic federal rule' in bankruptcy is that state law governs the substance of claims.").

The overall lending transaction provides the Court with guidance as to which state's law applies. To determine which law applies to the Note, the Court considers together all documents involved in the underlying transaction. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 875 (Tex. 2010) (holding courts can consider agreements collateral to integrated transactions). When the Debtor purchased her home, the Debtor signed the Note and a Deed of Trust.[6] The seller of the home, who happened to be the financier of the Note, executed a Warranty Deed with Vendor's Lien ("Warranty Deed").[7] The Note, Deed of Trust, and Warranty Deed were each drafted by an attorney that practiced law in Texas, they were each signed and notarized in Texas counties, and the Debtor's home and the parties are located in Texas. Further, the Deed of Trust references application of Texas law in other contexts.[8]

Therefore, consistent with applicable rules for contract interpretation, the Court will apply Texas state law to determine the substance of Creditors' Claim. *See ERI Consulting*, 318 S.W.3d at 875 (describing "consistent collateral agreements"); *Hance, Scarborough, Wright, Ginsberg & Brusilow L.L.P. v. Kincaid*, 70 S.W.3d 907,

---

[6] The Deed of Trust was admitted as Creditors' Ex. 3.

[7] The Warranty Deed was admitted as Creditors' Ex. 4.

[8] Creditors' Ex. 3 at 3, 4 (referencing the Texas Property Code and "Texas law").

911 n.4 (Tex. App.—Amarillo 2002, pet. denied) ("A promissory note is nothing more than a contract evincing an obligation to pay money. As such, the construction of its terms is controlled by the rules generally applicable to interpreting contracts."); *see also Bd. of Regents of Univ. of Tex. Sys. v. IDEXX Lab'ys, Inc.*, 691 S.W.3d 438, 443 (Tex. 2024) ("... [O]ur quest is to determine, objectively, what an ordinary person using those words under the circumstances in which they are used would understand them to mean.").

### B. The Note is not Ambiguous.

Because Texas law applies, the Note's failure to specify a numerical interest rate for matured, unpaid amounts did not create an ambiguity in the Note. *See, e.g.*, *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 497 (Tex. App.—Texarkana 2005, no pet.) (analyzing state law to determine applicable interest rate where contract provided for maximum rate permitted by law). In *All Seasons Window & Door*, the court construed a contract provision that stated, "all deferred payments shall bear interest from the time they are due until paid at the maximum rate permitted by the applicable law." *Id.* at 497. This language made the contract distinguishable from agreements that make no reference to interest and permitted the court to establish an interest rate supported by Texas law. *See id.* at 497–98 (citing TEX. FIN. CODE ANN. §§ 302.001(b), 303.002).

### C. The Correct Interest Rate is 18%.

To determine the appropriate interest rate allowed under the Note, the Court starts its analysis with the Texas Constitution. The Texas Constitution provides that "[t]he Legislature shall have authority to define interest and fix maximum

rates of interest." Tex. Const. art. XVI, § 11. The Texas legislature has fixed maximum rates of interest under the Texas Finance Code.

Chapter 302 of the Texas Finance Code provides "[t]he maximum rate or amount of interest is 10 percent a year except as otherwise provided by law." TEX. FIN. CODE ANN. § 302.001(b). This does not, however, end the inquiry. *See All Seasons Window & Door*, 181 S.W.3d at 497–98 (agreeing with other Texas courts that the default interest rate of § 302.002 does not apply when parties contract for an interest rate that is the maximum rate permitted by law). Instead, the Texas Finance Code provides that, in certain situations, a creditor may charge an interest rate higher than 10% so long as it does not exceed the applicable interest rate ceiling provided by Chapter 303 of the Texas Finance Code. TEX. FIN. CODE ANN. § 303.001(a).

Chapter 303 of the Texas Finance Code provides four different rate ceilings: a weekly, monthly, quarterly, and annual ceiling. *See id.* §§ 303.002, .004, .006, .007. The default is the weekly ceiling, unless the parties agree to one of the other ceilings and the transaction allows it. *See id.* The consumer credit commissioner sends the rate ceilings to the secretary of state, and the secretary of state publishes the rate ceilings in the Texas Register. *See id.* § 303.011.

However, these optional rate ceilings do not apply to transactions secured by an obligor's homestead and "under which credit is extended by the seller, or an owner, subsidiary, or corporate affiliate of the seller, for a transaction governed by Chapter 601, Business & Commerce Code." *Id.* § 303.301.

7

Transactions governed by Chapter 601 of the Texas Business & Commerce Code include those in which:

> (1) the merchant or the merchant's agent engages in a personal solicitation of a sale to the consumer at a place other than the merchant's place of business;
>
> (2) the consumer's agreement or offer to purchase is given to the merchant or the merchant's agent at a place other than the merchant's place of business; and
>
> (3) the agreement or offer is for: . . . (B) the purchase of real property for consideration that exceeds $100, payable in installments or in cash.

TEX. BUS. & COM. CODE ANN. § 601.002(a). An exception applies that removes transactions from the purview of Chapter 601:

> [T]his chapter does not apply to: . . .
>
> (4) a sale of real property if:
>
> (A) the purchaser is represented by a licensed attorney;
>
> (B) the transaction is negotiated by a licensed real estate broker; or
>
> (C) the transaction is negotiated at a place other than the consumer's residence by the person who owns the property.

*Id.* § 601.002(b)(4).

With this statutory framework in mind, and based on the evidence admitted at the hearing, the Court determines the applicable interest rate under the Note for matured, unpaid amounts is 18%. First, Creditors admitted the Note, which states that matured, unpaid amounts owing under the Note are subject to the highest interest rate allowed by law. *See* Creditors' Ex. 2. Such interest rate is defined by Chapter 303 of the Texas Finance Code. *See* TEX. FIN. CODE ANN. § 303.001(a).

Second, Creditors introduced the Consumer Credit Commissioner's Notices of Rate Ceilings (the "Texas Credit Letters") for all periods after the Note was accelerated. *See* Creditors' Ex. 6. Throughout the time after the Note was accelerated, the weekly interest rate ceiling was 18%. *See id.*

Finally, the Debtor did not introduce evidence that Chapter 601 of the Texas Business and Commerce Code applied to the transaction to preclude application of the weekly rate ceiling to the Note.

For these reasons, the Court finds that the proper interest rate post-acceleration is 18%.

### D.  Creditors' Claim is Allowed in Full.

As stated above, a properly filed proof of claim is *prima facie* evidence of the claim's validity and amount. Fed. R. Bankr. P. 3001(f); *accord O'Connor*, 153 F.3d at 260. It was the Debtor's burden to rebut the presumptive validity of Creditors' Claim. Debtor argued that Creditors' Claim states an amount that includes an incorrect calculation of interest. This argument is unsupported by the evidence before the Court.

Nonetheless, assuming Debtor met her initial burden to then shift the burden to Creditors to prove their entitlement to the amount stated in the claim, Creditors successfully met their burden. Moreover, Debtor's proposed calculation of Creditors' Claim does not account for the Note's proper acceleration. Creditors' evidence included the Note, the Deed of Trust, a loan payment history,[9] and the Texas Credit Letters. Creditors proved the amount of their claim and that it properly included

---

[9] Admitted as Creditors' Ex. 8.

9

interest at 18%. It is, therefore,

ORDERED that Debtor's objection to Creditors' Claim is OVERRULED.

### End of Memorandum Opinion and Order ###